737 S.E.2d 550

DAN RYAN BUILDERS,
INCORPORATED,
Petitioner

v.

Norman C. NELSON and Angelia
Nelson, Respondents.

No. 12–0592.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 17, 2012.

Decided Nov. 15, 2012.

Susan R. Snowden, Esq., Martin & Seibert, L.C., Martinsburg, WV, for Petitioner.

Lawrence M. Schultz, Esq., Burke, Schultz, Harman & Jenkinson, Martinsburg, WV, for Respondents.

KETCHUM, Chief Justice:

The United States Court of Appeals for the Fourth Circuit has certified a question to this Court that concerns two areas of state law: the law of contract formation, and the doctrine of unconscionability. The question from the Court of Appeals arises from a contract that contained an arbitration provision which required one party to the contract to arbitrate *all* of their claims, but allowed the other party to file a lawsuit for *some* of its claims. A federal district court previously determined that the arbitration provision was not enforceable because it lacked "mutuality of obligation" and "mutuality of consideration."

The Court of Appeals asks:

Does West Virginia law require that an arbitration provision, which appears as a single clause in a multi-clause contract, itself be supported by mutual consideration when the contract as a whole is supported by adequate consideration?

*Dan Ryan Builders, Inc. v. Nelson*, 682 F.3d 327 (4th Cir.2012). We conclude that West Virginia's law of contract formation only requires that a contract as a whole be supported by adequate consideration. Hence, a single clause within a multi-clause contract does not require separate consideration. However, we further conclude that under the doctrine of unconscionability, a trial court may decline to enforce a contract clause—such as an arbitration provision—if the obligations or rights created by the clause unfairly lack mutuality.

## I.

### *Factual and Procedural Background*

Dan Ryan Builders, Inc. ("DRB"), constructed a new home in Berkeley County, West Virginia. In May 2008, Norman Nelson signed a 56–page contract with DRB for the sale and purchase of that home for $385,000.00. The contract contained an arbitration clause which states, in part, that:

> Any dispute arising under or pursuant to this Agreement, or in any way related to the Property and/or with respect to any claims arising by virtue of any representations alleged to have been made by [Dan Ryan Builders] ... shall be settled and finally determined by arbitration and not in a court of law ... The parties hereto specifically acknowledge that they are and shall be bound by arbitration and are barred from initiating any proceeding or action whatsoever in connection with this Agreement.[1]

In the same arbitration provision, however, DRB reserved the right to seek arbitration *or* to file an action for damages, if Mr. Nelson "default[ed] by failing to settle on the Property within the time required under [the] Agreement."

Mr. Nelson alleges that, after he completed the purchase of the house, he found numerous, substantial defects in the house's construction. In May 2010, Mr. Nelson and his wife Angelia filed a lawsuit against DRB in the Circuit Court of Berkeley County. The lawsuit seeks damages from DRB for allegedly concealing its knowledge of an illegal septic system, of previous basement flooding, and of substandard concrete. It also alleges that DRB negligently designed and constructed the septic system, which resulted in property damages and bodily injury. DRB answered the Nelson's complaint.[2]

DRB subsequently filed a petition in the United States District Court for the North-

---

1. The entire arbitration clause states:
   19. Arbitration
   (a) Any dispute arising under or pursuant to this Agreement, or in any way related to the Property and/or with respect to any claims arising by virtue of any representations alleged to have been made by Us, or any agents and/or employees thereof, (with the exception of "Consumer Products" as defined by the Magnuson–Moss Warranty Federal Trade Commission Improvements Act, 15 U.S.C. Section 2301 et seq. and the regulations promulgated thereunder) shall be settled and finally determined by arbitration and not in a court of law, irrespective of whether or not such claim arises prior to or after Settlement hereunder, pursuant to the Construction Industry Arbitration Rules and the Supplementary Procedures for Residential Construction Disputes of the American Arbitration Association ("AAA") then in effect. Prior to commencing arbitration, the dispute shall first be mediated in accordance with the Construction Industry Mediation Rules of AAA, or another mediation service designated by Us. The parties hereto specifically acknowledge that they are and shall be bound by arbitration and are barred from initiating any proceeding or action whatsoever in connection with this Agreement. Notwithstanding anything to the contrary herein contained, in the event You default by failing to settle on the Property within the time required under this Agreement, then We may either (i) commence an arbitration proceeding under this Section 19, or (ii) bring an action for its damages, including reasonable attorneys' fees, as a result of the default in a court having jurisdiction over the Purchaser. You expressly waive your right to mediation and arbitration in such event. Each party shall be entitled to full discovery in accordance with the local rules of court in the event that arbitration is invoked under this Section 19. The provisions of this Section 19 shall survive the execution and delivery of the deed, and shall not be merged therein.
   (b) In the event that an action is brought in court under Section 19(a) or for any reason a claim is determined not to be subject to binding arbitration under Section 19(a), then You and Us knowing [sic] and voluntarily waive our rights to a trial by jury in any action, proceeding or counterclaim related to this Agreement or the Property, including such actions, proceedings or counterclaims in which You and Us as well as others are parties.

2. The Nelson's complaint also asserted a cause of action against Eagle Excavating & Contracting, LLC, alleging that Eagle installed a septic system in the house that failed to meet legal requirements. In its answer, DRB cross-claimed against Eagle, and filed a third-party complaint against two concrete subcontractors it had hired, Price Quality Concrete Corp. and Kirby's Custom Concrete, LLC. None of these three subcontractors were parties to the arbitration agreement signed by Mr. Nelson. Piecemeal litigation—where one case is split into numerous smaller lawsuits and arbitrations—is common in construction-related disputes. *See State ex rel. Johnson Controls, Inc. v. Tucker*, 229 W.Va. 486, 496, 729 S.E.2d 808, 818 (2012).

ern District of West Virginia, pursuant to the Federal Arbitration Act ("the FAA"),[3] seeking to compel Mr. and Mrs. Nelson[4] to submit their claims to arbitration. The district court stayed litigation of the Berkeley County lawsuit until DRB's petition could be resolved.

In response to DRB's petition, the Nelsons argued to the district court that the arbitration provision (which allowed DRB to pursue some claims in court while requiring the Nelsons to arbitrate all of their claims) was unenforceable because it lacked consideration, and because it was unconscionable. The district court declined to rule on the whether the clause was conscionable, but dismissed DRB's petition to compel arbitration because the arbitration provision lacked mutuality of consideration. The district court's order stated:

> [T]his Court finds that the arbitration clause in the Agreement of Sale used by DRB in its transaction with the [Nelsons] ... fails for want of mutual consideration. The arbitration clause begins with an appearance of mutuality ... As the clause continues, however, the reader finds that any hope of mutuality can only be described as fleeting.... Therefore, ... the instant arbitration clause must fail for want of mutual consideration.

*Dan Ryan Builders, Inc. v. Nelson,* 2010 WL 5418939, *6 (N.D.W.Va.2010).

DRB appealed the district court's order to the United States Court of Appeals for the Fourth Circuit, arguing that the arbitration provision did not require separate consideration or mutual obligations. DRB argued that the provision was enforceable because there was otherwise sufficient consideration to support the entire contract. On May 10, 2012, the Court of Appeals noted various West Virginia cases on the law of contracts—particularly cases discussing consideration, mutuality and unconscionability in the context of arbitration—and concluded that our

law was unclear on the issues raised by DRB's appeal. Accordingly, the Court of Appeals certified its question to this Court.

## II.

### Standard of Review

█ We review the question from the Court of Appeals *de novo. See,* Syllabus Point 1, *Light v. Allstate Ins. Co.,* 203 W.Va. 27, 506 S.E.2d 64 (1998) ("A de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court."); Syllabus Point 1, *Bower v. Westinghouse Elec. Corp.,* 206 W.Va. 133, 522 S.E.2d 424 (1999) ("This Court undertakes plenary review of legal issues presented by certified question from a federal district or appellate court.").

## III.

### Analysis

Because the parties' dispute involves a written arbitration agreement evidencing a transaction affecting interstate commerce, they agree that the decision of this Court must be guided, in part, by Section 2 of the Federal Arbitration Act (9 U.S.C. § 2), which states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

*See* Syllabus Point 6, *Brown v. Genesis Healthcare Corp.,* 228 W.Va. 646, 724 S.E.2d 250 (2011) ("*Brown I*").[5] The federal statute

---

**3.** 9 U.S.C. §§ 1 to 16 [1947].

**4.** The basis for DRB's petition to compel Mrs. Nelson to arbitrate her claims is unclear from the record, since there is nothing to evidence her written agreement to arbitrate. The contract for the purchase of the DRB house, which contains

the disputed arbitration provision, was signed only by Mr. Nelson.

**5.** Our decision in *Brown I* was later vacated by the United States Supreme Court in *Marmet Health Care Center, Inc. v. Brown,* —— U.S. ——,

contains two parts: "the first part holds that written arbitration agreements affecting interstate commerce are 'valid, irrevocable, and enforceable,' but the second part is a 'savings clause' that allows courts to invalidate those arbitration agreements using general contract principles." 228 W.Va. at 669–70, 724 S.E.2d at 273–74.

> While the first part of Section 2 of the FAA preempts state statutes and doctrines that deliberately impede the rights of private parties to agree to arbitration, under the savings clause of Section 2, general state contract principles still apply to assess whether those agreements to arbitrate are valid and enforceable, just as they would to any other contract dispute arising under state law.

228 W.Va. at 672, 724 S.E.2d at 276.

■ The purpose of Section 2 "is for courts to treat arbitration agreements like any other contract. The Act does not favor or elevate arbitration agreements to a level of importance above all other contracts; it simply ensures that private agreements to arbitrate are enforced according to their terms." Syllabus Point 7, *Brown I, supra.* The statute "has no talismanic effect;" the purpose of Congress in adopting it "was to make arbitration agreements as enforceable as other contracts, but not more so." *Brown I*, 228 W.Va. at 671, 724 S.E.2d at 275 (footnotes omitted).[6] "[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of*

*Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

■ We are cognizant that the Supremacy Clause of the United States *Constitution* "invalidates state laws that interfere with or are contrary to federal law." Syllabus Point 1, *Cutright v. Metropolitan Life Ins. Co.*, 201 W.Va. 50, 491 S.E.2d 308 (1997). Hence, when a statute or common-law doctrine outright prohibits the arbitration of a particular type of claim, or which targets arbitration provisions for disfavored treatment not applied to other contractual terms generally, then the conflicting doctrine is displaced by the FAA. *See Brown v. Genesis Healthcare Corp.*, 228 W.Va. at 671–72, 724 S.E.2d at 275–76. Put simply, arbitration provisions must be placed on the same footing as all other contract provisions.

The question certified from the Court of Appeals is framed in the context of an arbitration provision being compared to other contract provisions. However, we believe that the question can be answered with reference to principles generally applicable to all contracts. Our answer to the question is in two parts, because the district court's decision repeatedly applied the nebulous term "mutuality." The first part of our answer concerns consideration in the formation of a contract, and whether there must be "mutuality of consideration" or "mutuality of obligation" for each separate provision in a contract. The second part of our answer concerns the doctrine of unconscionability, and whether there must be "mutuality of obligation" for a provision to be enforceable.

132 S.Ct. 1201, 182 L.Ed.2d 42 (2012). On remand from the Supreme Court, in an opinion we refer to as *"Brown II,"* we overruled one syllabus point of *Brown I* but otherwise reaffirmed all of our other holdings. *See Brown v. Genesis Healthcare Corp.*, 229 W.Va. 382, 388, 729 S.E.2d 217, 223 (2012) ("[T]he Supreme Court's decision does not counsel us to alter our original analysis of West Virginia's common law of contracts.").

6. DRB's brief to this Court contains what we perceive as a typical, misleading suggestion that Section 2 of the FAA carries some omnipotent effect. DRB states that the FAA requires state courts to alter their contract law, and "define the contract law applicable to arbitration provisions to be in concert with the FAA." *Petitioner's Brief*

*on Certified Question* at 7. DRB also argues that "claims of fraud in the inducement of a contract are arbitrable issues and are not recognized under the FAA as grounds for avoidance of arbitration. The result should be no different with claims of coercion or duress." *Brief* at 18. Both of these suggestions are directly contradicted by the language of Section 2. So long as a state's contract law does not single out arbitration provisions for special treatment, a state court may define its law of contracts any way it chooses under the FAA. It may also void any arbitration clause on any general ground that exists at law or in equity for the revocation of any contract, including for fraud in the inducement, coercion, or duress.

A. *The formation of a contract requires only consideration, not mutual obligations by the parties*

■ The elements of a contract are an offer and an acceptance supported by consideration. Syllabus Point 1, *First Nat. Bank of Gallipolis v. Marietta Mfg. Co.*, 151 W.Va. 636, 153 S.E.2d 172 (1967); Syllabus Point 5, *Virginian Export Coal Co. v. Rowland Land Co.*, 100 W.Va. 559, 131 S.E. 253 (1926) ("The fundamentals of a legal contract are competent parties, legal subject matter, valuable consideration and mutual assent. There can be no contract if there is one of these essential elements upon which the minds of the parties are not in agreement.").

■ The question certified by the Court of Appeals concerns the element of consideration for a contract. "That consideration is an essential element of, and is necessary to the enforceability or validity of a contract is so well established that citation of authority therefor is unnecessary." *First Nat. Bank of Gallipolis*, 151 W.Va. at 642, 153 S.E.2d at 177. *See also, Cook v. Heck's Inc.*, 176 W.Va. 368, 373, 342 S.E.2d 453, 458–459 (1986) ("Consideration is also an essential element of a contract."); Syllabus Point 1, *Thomas v. Mott*, 74 W.Va. 493, 82 S.E. 325 (1914) ("No promise is good in law unless there is a legal consideration in return for it."); *Sturm v. Parish*, 1 W.Va. 125, 144 (1865) ("That a parol contract or promise without consideration is void, is too well established to require any comment."). Conversely, a "promise or contract where there is no valuable consideration, and where there is no benefit moving to the promisor or damage or injury to the promisee, is void." Syllabus Point 2, *Sturm.*

■ The term "consideration" has been defined as "some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by another. A benefit to the promisor or a detriment to the promisee is sufficient consideration for a contract." *First Nat. Bank of Gallipolis v. Marietta Mfg. Co.*, 151 W.Va. at 642, 153 S.E.2d at 177 [citations omitted]. We similarly stated, in Syllabus Point 1 of *Tabler v. Hoult*, 110 W.Va. 542, 158 S.E. 782 (1931), that in contract formation "[a] valuable consideration may consist either in some right, interest, profit or benefit accruing to the one party or some forbearance, detriment, loss or responsibility given, suffered, or undertaken by the other."

In the instant case, the Nelsons assert that the arbitration clause should fail for lack of consideration because the benefits accruing to the parties under the arbitration provision are significantly different, and therefore lack mutuality. The Nelsons assert that the provision required that they give up all rights to pursue any claims in a court in favor of arbitration, while simultaneously giving DRB the right to go to court for the only claim that DRB was likely to pursue (to compel the Nelsons to pay for the house).[7]

DRB does not challenge the Nelsons' interpretation of the arbitration clause. Instead, DRB argues that, under West Virginia law, individual clauses of contracts (including arbitration clauses) need not be supported by additional consideration where the contract as a whole is supported by sufficient and mutual consideration. Because the contract was 56 pages long, and contained numerous reciprocal promises, rights, profits, losses and responsibilities, DRB asserts the entire contract had sufficient consideration. We agree.

A leading treatise on contract law, *Corbin on Contracts*, acknowledges that, when examining whether a contract has been formed, the "concept of 'mutuality' is an appealing one. It seems to connote equality, fairness, justice[.]" Joseph M. Perillo, et al., 2 *Corbin on Contracts* § 6.1 at 196–97 (Rev. Ed.1995). The treatise states:

It was once common for courts to state that mutuality of obligation is necessary for a valid contract; that both parties to a

7. The Nelsons also pose the novel argument that a consumer real estate purchase is a transaction covered by the West Virginia Consumer Credit and Protection Act, W.Va.Code §§ 46A–2–101 to –139, in part because "[h]ouses are by far the most expensive consumer goods West Virginians ever buy." The Nelsons further argue that the

Act requires mutuality of obligation in consumer contracts. *See Arnold v. United Companies Lending Corp.*, 204 W.Va. 229, 511 S.E.2d 854 (1998); *State ex rel. Dunlap v. Berger*, 211 W.Va. 549, 567 S.E.2d 265 (2002). We decline to address this argument in the instant case.

contract must be bound or neither is bound; that a contract is void for lack of "mutuality."

*Id.* However, the treatise goes on to state that the modern rule of contract rejects any notion that mutuality is necessary to *form* a contract:

> But symmetry is not justice and the so-called requirement of mutuality of obligation is now widely discredited. It is consideration (or some other basis for enforcement) that is necessary, not mutuality of obligation.

*Id.*

Our examination of treatises,[8] of journals,[9] and of cases from other jurisdictions suggests that, as in the instant case, parties to contracts frequently challenge the enforceability of arbitration clauses—clauses which do not impose parallel duties to arbitrate on both parties—on the ground that the clauses lack consideration or lack equivalent promises (that is, lack mutuality of obligation). However, the majority of courts conclude that the parties need not have separate consideration for the arbitration clause, or equivalent, reciprocal duties to arbitrate, so long as the underlying contract as a whole is supported by valuable consideration.[10]

■ We therefore conclude that the formation of a contract with multiple clauses

---

8. *See, e.g.,* Richard A. Lord, 3 *Williston on Contracts* § 7:14 at 326–30 (4th Ed.2008) ("The courts have often stated as a requirement for the formation of simple contracts that there must be mutuality of obligation. Unfortunately, this form of statement may cause confusion for it has no definite meaning; it is, in fact, simply an awkward way of stating that there must be a valid consideration."); *Restatement (Second) of Contracts* § 79 (1981) ("If the requirement of consideration is met, there is no additional requirement of ... (c) 'mutuality of obligation.' ").

9. *See, e.g.,* Christopher R. Drahozal, "Nonmutual Agreements to Arbitrate," 27 J. of Corp.L. 537, 539–40, 544 (2002) ("The doctrine of mutuality of obligation has been 'thoroughly discredited[.]' ... Nonetheless, 'the ghost of mutuality still walks,' and until laid to rest, 'will continue to haunt our law.' ... Today, virtually all courts hold that the doctrine of mutuality of obligation does not preclude enforcement of nonmutual arbitration clauses"); Richard A. Bales, "Contract Formation Issues in Employment Arbitration," 44 Brandeis L.J. 415, 453 (2006) ("[M]utuality is not required so long as the employer has provided the employee with some other type of consideration.... [M]utuality problems are easy to avoid. The easiest way to ensure mutuality is to make the arbitration promises reciprocal ... [or by] making arbitration part of a larger contract[.]"); Stephen A. Plass, "Mandatory Arbitration As An Employer's Contractual Prerogative: The Efficiency Challenge to Equal Employment Opportunity," 33 Cardozo L.Rev. 195, 223–24 (2011) ("[M]utuality of obligation does not require both parties to provide the same consideration, so an employer's reservation of its right to sue generally will not present a mutuality problem if it provides some valid consideration.").

10. *See, e.g., Booker v. Robert Half Intern., Inc.,* 315 F.Supp.2d 94, 101–02 (D.D.C.2004) ("Under modern contract law ... so long as a contract is supported by sufficient consideration there is no requirement of equivalent promises or 'mutuality of obligation.' "); *Anderson v. Delta Funding Corp.,* 316 F.Supp.2d 554, 566–67 (N.D.Ohio 2004) ("Mutuality is not a prerequisite to a valid arbitration agreement when the underlying contract is supported by consideration."); *McKenzie Check Advance of Miss., LLC v. Hardy,* 866 So.2d 446, 452–53 (Miss.2004) ("[M]utuality of obligation is not required for an arbitration agreement to be enforceable as long as there is consideration."); *Blair v. Scott Specialty Gases,* 283 F.3d 595, 603–04 (3rd Cir.2002) ("when both parties have agreed to be bound by the results of an arbitration proceeding, adequate consideration exists and the arbitration agreement should be enforced"); *Harris v. Green Tree Financial Corp.,* 183 F.3d 173, 180–81 (3rd Cir.1999) (arbitration clause need not have mutuality of obligation as long as the contract is supported by consideration); *Barker v. Golf U.S.A., Inc.,* 154 F.3d 788, 791–92 (8th Cir.1998) ("Consideration for a contract as a whole covers the arbitration clause."); *Doctor's Assocs., Inc. v. Distajo,* 66 F.3d 438, 451–53 (2nd Cir.1995) (mutuality of obligation or remedy not required if arbitration agreement supported by consideration); *Sablosky v. Edward S. Gordon Co., Inc.,* 73 N.Y.2d 133, 538 N.Y.S.2d 513, 535 N.E.2d 643 (1989) ("If there is consideration for the entire agreement that is sufficient; the consideration supports the arbitration option, as it does every other obligation in the agreement."); *W.L. Jorden & Co., Inc. v. Blythe Industries, Inc.,* 702 F.Supp. 282, 284 (N.D.Ga.1988) ("[W]here the agreement to arbitrate is integrated into a larger unitary contract, the consideration for the contract as a whole covers the arbitration clause as well."); *LaBonte Precision, Inc. v. LPI Industries Corp.,* 507 So.2d 1202, 1203 (Fla.Dist.Ct.App.1987); *Kalman Floor Co., Inc. v. Joseph L. Muscarelle, Inc.,* 196 N.J.Super. 16, 481 A.2d 553 (1984), aff'd for reasons stated below, 98 N.J. 266, 486 A.2d 334 (1985); *Willis Flooring, Inc. v. Howard S. Lease Const. Co. & Associates,* 656 P.2d 1184, 1185 (Alaska 1983) ("As one clause in a larger

only requires consideration for the entire contract, and not for each individual clause.[11] So long as the overall contract is supported by sufficient consideration, there is no requirement of consideration for each promise within the contract, or of "mutuality of obligation," in order for a contract to be formed.

### B. *Whether the parties' obligations are mutual is a factor to examine in determining unconscionability*

We now turn to the second part of our answer to the Court of Appeals' question. As we just said, mutuality of obligation is not a factor to consider in the formation of a contract. Mutuality of obligation is, however, a factor for a court to consider when assessing whether a contract (or provision therein) is unconscionable. In other words, a provision in a contract that lacks mutuality—that is, an obligation that could be called unilateral, unbalanced, or non-reciprocal—may lead a court to find the provision is so lop-sided and unfair that, as a matter of equity, the provision should not be enforced.

■ "In *Brown I*, we assembled an extensive set of common-law factors for courts to weigh in assaying whether a contract, or a particular term or clause within a contract, is unconscionable." *Brown v. Genesis Healthcare Corp.*, 229 W.Va. 382, 391, 729 S.E.2d 217, 226 (2012) ("*Brown II* "). "The doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written. The concept of unconscionability must be applied in a flexible manner, taking into consideration all of the

facts and circumstances of a particular case." Syllabus Point 12, *Brown I*.

■ "Under West Virginia law, we analyze unconscionability in terms of two component parts: procedural unconscionability and substantive unconscionability." *Brown I*, 228 W.Va. at 681, 724 S.E.2d at 285. To be unenforceable, a contract term must—"at least in some small measure"—be both procedurally and substantively unconscionable. Syllabus Point 20, *Brown I; State ex rel. Johnson Controls, Inc. v. Tucker*, 229 W.Va. 486, 498–99, 729 S.E.2d 808, 820–21 (2012).

■ Procedural unconscionability arises from inequities, improprieties, or unfairness in the bargaining process and the formation of the contract, inadequacies that suggest a lack of a real and voluntary meeting of the minds of the parties. *See,* Syllabus Point 17, *Brown I*. Substantive unconscionability involves unfairness in the terms of the contract itself, and arises when a contract term is so one-sided that it has an overly harsh effect on the disadvantaged party. *See* Syllabus Point 19, *Brown I*.

In several recent opinions discussing the unconscionability doctrine, we have noted that the lack of mutuality in a contractual obligation—particularly in the context of arbitration—is an element a court may consider in assessing the substantive unconscionability of a contract term. For instance, in *Brown II*, we stated that:

> Substantive unconscionability may manifest itself in the form of "an agreement requiring arbitration only for the claims of the weaker party but a choice of forums for the claims of the stronger party." "Some courts suggest that mutuality of obligation is the locus around which sub-

---

contract, the [arbitration] clause is binding to the same extent that the contract as a whole is binding.").

11. *State ex rel. Saylor v. Wilkes*, 216 W.Va. 766, 613 S.E.2d 914 (2005) demonstrates how a contract must, in its entirety, be supported by consideration. In *Saylor*, the plaintiff applied for a job at a restaurant. In her application papers, the plaintiff signed a stand-alone contract promising to arbitrate any dispute with the restaurant, and in return the restaurant agreed to review the plaintiff's application. We concluded that the restaurant's promise to merely review the plain-

tiff's application was not sufficient consideration and ruled that the entire arbitration contract was unenforceable. 216 W.Va. at 775–76, 613 S.E.2d at 923–24.

In the instant case, the Court of Appeals found that *Saylor* was inapplicable because the *Saylor* contract pertained only to arbitration. Unlike *Saylor*, "the arbitration provision before us is part of a multi-clause contract between parties who both made certain promises regarding arbitration and other substantive rights." *Dan Ryan Builders, Inc. v. Nelson*, 682 F.3d at 329. We agree with the federal court's determination that *Saylor* provides no guidance.

stantive unconscionability analysis revolves." "Agreements to arbitrate must contain at least 'a modicum of bilaterality' to avoid unconscionability."

*Brown II*, 229 W.Va. at 393, 729 S.E.2d at 228 (*quoting Mercuro v. Superior Court*, 96 Cal.App.4th 167, 176, 116 Cal.Rptr.2d 671, 677 (2002); *Brown I*, 228 W.Va. at 683, 724 S.E.2d at 287; and *Abramson v. Juniper Networks, Inc.*, 115 Cal.App.4th 638, 657, 9 Cal.Rptr.3d 422, 437 (2004)). *See also, State ex rel. Richmond American Homes of West Virginia, Inc. v. Sanders*, 228 W.Va. 125, 137, 717 S.E.2d 909, 921 (2011) ("In assessing substantive unconscionability, the paramount consideration is mutuality.").

█ In a majority of jurisdictions, it is well-settled that a contract which requires the weaker party to arbitrate any claims he or she may have, but permits the stronger party to seek redress through the courts, may be found to be substantively unconscionable. Such "unilateral" arbitration clauses lend themselves "extremely well to the application of the doctrine" of unconscionability because "the right the clause bestows upon its beneficiary is so wholly one-sided and unfair that the courts should feel no reluctance in finding it unacceptable":

> The doctrine of unconscionability . . . fits the unilateral arbitration clause wonderfully well. Its essential elements have been held to be "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." Both elements are present in the case of a unilateral arbitration clause. First, its very nature is such that a person who is not its beneficiary will not agree to it, except when forced to accept it or ignorant

of its true purpose and effect. Second, the advantage the clause gives to its beneficiary is most unreasonable.

Hans Smit, "The Unilateral Arbitration Clause: A Comparative Analysis," 20 Am. Rev.Int'l Arb. 391, 404–405 (2009).[12] As a general principle, a court may determine that a contract clause with non-reciprocal, overly one-sided obligations lacks mutuality, and is therefore substantively unconscionable.

For example, in *Arnold v. United Companies Lending Corp.*, 204 W.Va. 229, 511 S.E.2d 854 (1998), this Court found that an arbitration agreement with non-reciprocal obligations was unconscionable, void and unenforceable. In *Arnold*, an elderly couple received a mortgage loan from a lender, and in the transaction the couple was presented with more than twenty-five documents to sign. One of the documents was a two-page arbitration agreement that required the couple to resolve all legal controversies regarding the loan "solely and exclusively by arbitration." However, the agreement preserved the lender's right to pursue several actions against the elderly couple in court, including actions relating to the collection of the debt and foreclosure proceedings. *Arnold*, 204 W.Va. at 232–33, 511 S.E.2d at 857–58. We concluded in *Arnold* that the overly one-sidedness of the arbitration provision rendered the provision unconscionable.

█ We emphasize that a one-sided contract provision may not be unconscionable under the facts of all cases. "The concept of unconscionability must be applied in a flexible manner, taking into consideration all of the facts and circumstances of a particular case." Syllabus Point 12, in part, *Brown I*. A court in its equity powers is charged with the discretion to determine, on a case-by-case

---

**12.** *See also,* Linda Alle–Murphy, "Are Compulsory Arbitration Clauses in Consumer Contracts Enforceable? A Contractual Analysis," 75 Temp. L.Rev. 125, 152–53 (2002) (unconscionability may be found where an arbitration agreement "exemplifies what one law school professor has aptly named 'fake mutuality,' whereby the stronger party drafts an arbitration agreement that at first blush appears to put both parties on an equal footing, but upon closer inspection actually favors the stronger party."); Arthur M. Kaufman, Ross M. Babbitt, "The Mutuality Doctrine in the Arbitration Agreements: The Elephant in

the Road," 22 Franchise L.J. 101, 104 (2002) ("Mutuality of obligation is enjoying a different sort of renaissance in the arbitration context as a component of the unconscionability analysis."); Adam H. Nahmias, "The Enforceability of Contract Clauses Giving One Party the Unilateral Right to Choose Between Arbitration and Litigation," 21 Construction Lawyer 36, 37 (2001) ("[S]ome of the most common arguments against the enforceability of unilateral/discretionary arbitration provisions are that they are adhesive, lack mutuality, and are unconscionable.)

basis, whether a contract provision is so harsh and overly unfair that it should not be enforced under the doctrine of unconscionability.

Still, in Syllabus Point 5 of *Arnold,* contrary to the Federal Arbitration Act, we appeared to state a *per se* rule applicable only to arbitration agreements:

> Where an arbitration agreement entered into as part of a consumer loan transaction contains a substantial waiver of the borrower's rights, including access to the courts, while preserving the lender's right to a judicial forum, the agreement is unconscionable and, therefore, void and unenforceable as a matter of law.

Under the Federal Arbitration Act, a common-law ruling that targets arbitration provisions for disfavored treatment not applied to other contractual terms generally is preempted. *See Brown I,* 228 W.Va. at 671–72, 724 S.E.2d at 275–76. Accordingly, to the extent that Syllabus Point 5 of *Arnold* may be read to be a "matter of law," *per se* rule that targets arbitration provisions for disfavored treatment, the FAA compels us to overrule Syllabus Point 5.

We conclude that in assessing whether a contract provision is substantively unconscionable, a court may consider whether the provision lacks mutuality of obligation. If a provision creates a disparity in the rights of the contracting parties such that it is one-sided and unreasonably favorable to one party, then a court may find the provision is substantively unconscionable.

## IV.

### Conclusion

The certified question from the Court of Appeals asks:

> Does West Virginia law require that an arbitration provision, which appears as a single clause in a multi-clause contract, itself be supported by mutual consideration when the contract as a whole is supported by adequate consideration?

As we set forth above, we conclude that West Virginia's law of contract formation only requires that a contract as a whole be supported by adequate consideration. A single clause within a multi-clause contract does not require separate consideration or mutuality of obligation. However, under the doctrine of unconscionability, a trial court may decline to enforce a contract clause—such as an arbitration provision—if the obligations or rights created by the clause unfairly lack mutuality.

Certified Question Answered.