**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-2126**

PHILIP MCFARLAND,

        Plaintiff – Appellant,

    v.

WELLS FARGO BANK, N.A.; U.S. BANK NATIONAL ASSOCIATION,

        Defendants – Appellees,

    and

CHASE TITLE INC.,

        Defendant.

------------------------

AARP; CENTER FOR RESPONSIBLE LENDING; NATIONAL ASSOCIATION
OF CONSUMER ADVOCATES; NATIONAL CONSUMER LAW CENTER,

        Amici Supporting Appellant,

THE COMMUNITY BANKERS OF WEST VIRGINIA, INCORPORATED; THE
WEST VIRGINIA BANKERS ASSOCIATION,

        Amici Supporting Appellees.

Appeal from the United States District Court for the Southern
District of West Virginia, at Charleston.  Joseph R. Goodwin,
District Judge.  (2:12-cv-07997)

Argued:  October 28, 2015        Decided:  January 15, 2016

Before SHEDD, DIAZ, and HARRIS, Circuit Judges.

———————————

Affirmed in part, vacated in part, and remanded by published opinion. Judge Harris wrote the opinion, in which Judge Shedd and Judge Diaz joined.

———————————

**ARGUED:** Jennifer S. Wagner, MOUNTAIN STATE JUSTICE, INC., Clarksburg, West Virginia, for Appellant. John Curtis Lynch, TROUTMAN SANDERS LLP, Virginia Beach, Virginia, for Appellees. **ON BRIEF:** Bren J. Pomponio, MOUNTAIN STATE JUSTICE, INC., Charleston, West Virginia, for Appellant. Jason Manning, Megan Burns, TROUTMAN SANDERS LLP, Virginia Beach, Virginia, for Appellees. Jason E. Causey, BORDAS & BORDAS, PLLC, St. Clairsville, Ohio; Jonathan Marshall, Patricia M. Kipnis, BAILEY & GLASSER, LLP, Charleston, West Virginia, for Amici The National Consumer Law Center, AARP, The National Association of Consumer Advocates, and The Center for Responsible Lending. Floyd E. Boone, Jr., Stuart A. McMillan, Sandra M. Murphy, James E. Scott, BOWLES RICE LLP, Charleston, West Virginia, for Amici Community Bankers of West Virginia, Inc. and The West Virginia Bankers Association, Inc.

———————————

PAMELA HARRIS, Circuit Judge:

In 2006, at the height of the housing market, Philip McFarland was informed by a mortgage broker that his home's value had nearly doubled in two years. Acting on that advice, McFarland refinanced his home so that he could pay down other debt. But it soon became apparent that McFarland could not manage the increased interest payments on his new loan, and when housing prices fell, McFarland was faced with an unaffordable mortgage and a looming foreclosure.

McFarland sued, alleging that his mortgage agreement, providing him with a loan far in excess of his home's actual value, was an "unconscionable contract" under the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A–1–101, et seq. (the "Act" or the "WVCCPA"). The district court rejected that claim, holding that a loan exceeding the worth of a home, without more, is not evidence of "substantive unconscionability" under West Virginia law. And because the district court understood a WVCCPA claim always to require a showing of substantive unconscionability, it stopped its analysis there, without considering the fairness of the process by which the agreement was reached.

We agree with the district court that the amount of a mortgage loan, by itself, cannot show substantive unconscionability under West Virginia law, and that McFarland

3

has not otherwise made that showing. But we disagree as to the proper interpretation of the WVCCPA, and find that the Act allows for claims of "unconscionable inducement" even when the substantive terms of a contract are not themselves unfair. Accordingly, we remand so that the district court may consider in the first instance whether McFarland's mortgage agreement was induced by unconscionable conduct.

## I.

### A.

In 2004, McFarland purchased his Hedgesville, West Virginia home for roughly $110,000. Just two years later, in June 2006, he availed himself of then-favorable debt markets to engage in the refinancing that is the subject of this appeal. Interested in consolidating his approximately $40,000 in combined student and vehicle debt with his mortgage, McFarland entered into discussions with Greentree Mortgage Corporation ("Greentree"), a third-party mortgage lender. Greentree arranged for an appraisal of McFarland's property, and McFarland was informed that the market value of his home had jumped to $202,000 since its acquisition two years earlier.

McFarland then entered into two secured loan agreements. The first, which is the subject of this dispute, was a mortgage agreement with Wells Fargo Bank, N.A. ("Wells Fargo"), with a

4

principal amount of $181,800 and an adjustable interest rate that started at 7.75 percent and could increase to 13.75 percent (the "Wells Fargo Loan"). The second, not directly at issue here, was with Greentree, for an interest-only home equity line of credit of $20,000. As planned, McFarland used the proceeds of those two loans to consolidate all of his debts.

McFarland paid the Wells Fargo Loan without incident for roughly a year. In late 2007, however, he began to fall behind on his mortgage payments, and contacted Wells Fargo to ask for assistance. After several failed attempts to restructure McFarland's mortgage, Wells Fargo and McFarland entered into a loan modification in May 2010. The revised agreement reduced McFarland's interest rate and extended the term of the loan in exchange for an increase in the principal amount outstanding. But even under the new arrangement, McFarland remained unable to make his payments. In 2012, Wells Fargo initiated foreclosure on McFarland's home.

## B.

To stop the pending foreclosure, McFarland brought this action against Greentree and Wells Fargo, as well as U.S. Bank National Association ("U.S. Bank"), the trustee of a securitized

5

loan trust that now includes the Wells Fargo Loan.[1] Relevant to this appeal, McFarland alleged in his complaint that the Wells Fargo Loan was an "unconscionable contract" under the WVCCPA. See W. Va. Code § 46A-2-121(1)(a).

McFarland raised two distinct "unconscionable contract" arguments in his complaint and before the district court, either of which, he contended, could support an unconscionability finding under the WVCCPA. The first was a traditional unconscionability claim with its genesis in the common law, focusing on the terms of the Wells Fargo Loan itself and, in particular, the size of the mortgage it provided. Put simply, McFarland argued that Wells Fargo loaned him too much money. Citing a 2012 retroactive appraisal finding that his home was worth only $120,000 in June 2006 — considerably less than the $202,000 valuation that preceded the Wells Fargo Loan — McFarland claimed that Wells Fargo's excess loan tied him to an unaffordable mortgage that increased his housing burden by several hundred dollars a month and put his home at risk. That general species of unconscionability claim (if not this particular variant), alleging the unfairness of the terms of an

---

[1] After originating McFarland's mortgage loan, Wells Fargo sold the mortgage on the secondary market as part of a securitized loan trust. U.S. Bank is the trustee of that trust, which is owned by investors. Wells Fargo continues to service the loans in the trust.

6

agreement, is well established in West Virginia: In the context of consumer agreements, it is now codified under the WVCCPA, see W. Va. Code § 46A-2-121(1)(a) (court may refuse to enforce a consumer agreement that is "unconscionable at the time it was made"), and it has long roots in West Virginia's common law, see Brown v. Genesis Healthcare Corp., 729 S.E.2d 217, 226–27 (W. Va. 2012).

McFarland's second theory of unconscionability was more novel. West Virginia's traditional unconscionability doctrine, as is customary, requires a showing of both substantive unconscionability, or unfairness in the contract itself, and procedural unconscionability, or unfairness in the bargaining process. Genesis Healthcare, 729 S.E.2d at 221. But McFarland's alternative argument was that even if the Wells Fargo Loan was not unconscionable when made, the district court could invalidate it on the independent ground that it was "unconscionably induced" — in other words, based solely on factors predating acceptance of the contract and relating to the bargaining process. Specifically, McFarland argued that the Wells Fargo Loan was "induced by misrepresentations," focusing on what he alleged to be the vastly inflated appraisal of his home in 2006. And according to McFarland, that kind of unconscionable inducement is, under the text of the WVCCPA, grounds for relief by itself, without regard to the loan

7

agreement's substantive terms. See W. Va. Code § 46A-2-121(1)(a) (court may refuse to enforce a consumer agreement that is "unconscionable at the time it was made, or . . . induced by unconscionable conduct").

After McFarland filed his complaint, he and the defendants engaged in several months of extensive discovery. McFarland eventually reached a settlement with Greentree, but his case against Wells Fargo and U.S. Bank ("the Banks") proceeded. In the decision that is the subject of this appeal, the district court granted the Banks' motion for summary judgment and dismissed McFarland's unconscionable contract claim. McFarland v. Wells Fargo Bank, N.A., 19 F. Supp. 3d 663, 668–73 (S.D.W. Va. 2014).

As to substantive unconscionability, the district court explained that McFarland had identified two allegedly unconscionable features of the Wells Fargo Loan in both his complaint and his opposition to the Banks' motion for summary judgment: that the loan far exceeded the value of the property, and that the loan provided no "net tangible benefit" to McFarland. But neither, the district court held, provided a basis for a finding of substantive unconscionability.

That a refinanced loan exceeds the value of a home, the court ruled, is not evidence of substantive unconscionability under West Virginia law. "It is not 'overly harsh' or 'one-

8

sided' against the plaintiff that he received _more_ financing than he was allegedly entitled to receive."  McFarland, 19 F. Supp. 3d at 670 (emphasis in original).  If anything, the court reasoned, an under-secured mortgage disadvantages the lender, not the borrower.  Absent unfairness in specific loan terms like the rate of interest charged or the timing of payments, the court concluded, there is nothing substantively unconscionable about a loan simply because of its size.

Nor does West Virginia law require that a contract provide a "net tangible benefit" to either party, the court held.  Under West Virginia law, a contract is substantively unconscionable only if it is "one-sided," with an "overly harsh effect on the disadvantaged party."  Id. at 673 (quoting Genesis Healthcare, 729 S.E.2d at 221).  That is a different standard, the court reasoned, and whether the Wells Fargo Loan was of net benefit to McFarland is simply not relevant to the substantive unconscionability inquiry.

Finally, the district court held that in light of its holding as to substantive unconscionability, there was no need even to consider McFarland's allegations regarding the process that led to contract formation.  According to the district court, West Virginia law does not allow for a finding of unconscionable contract without some showing of substantive unconscionability.  As a result, the court dismissed McFarland's

9

claim — including his allegation of "unconscionable inducement" under the WVCCPA — without further addressing the purported misrepresentations that led to the Wells Fargo Loan.

McFarland timely appealed the dismissal of his unconscionable contract claim.

## II.

We review a district court's award of summary judgment de novo, and view the facts and the reasonable inferences that may be drawn from them in the light most favorable to the nonmoving party — here, McFarland. See Woollard v. Gallagher, 712 F.3d 865, 873 (4th Cir. 2013). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As a federal court sitting in diversity, our role is to apply governing West Virginia contract law, "or, if necessary, predict how the state's highest court would rule on an unsettled issue." Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co., 514 F.3d 327, 329 (4th Cir. 2008).

## A.

We begin with McFarland's contention that the district court erred as a matter of West Virginia law when it rejected McFarland's theories of substantive unconscionability. As the district court explained, McFarland identified, first in his

10

complaint and again in response to the Banks' motion for summary judgment, two and only two aspects of the Wells Fargo Loan that he claimed made it substantively unconscionable: "(1) that the loan far exceeded the value of the property and (2) that the loan did not provide a net tangible benefit." J.A. 266. Like the district court, we will limit our analysis to those two contentions. McFarland directed the district court to consider two specific terms of the Wells Fargo Loan, and to the extent that he now contends on appeal that other terms also are substantively unconscionable, those arguments are waived. See Malbon v. Pa. Millers Mut. Ins. Co., 636 F.2d 936, 941 (4th Cir. 1980).

**1.**

McFarland's primary argument is that the district court erred when it ruled that a refinanced loan exceeding the value of a home is not evidence of substantive unconscionability under West Virginia law. Because the West Virginia courts have not decided this question,[2] our task is to apply the relevant

---

[2] McFarland relies on two decisions of the West Virginia Supreme Court of Appeals, but in neither of those cases did the court hold that a loan exceeding the value of a home is evidence of substantive unconscionability. In Quicken Loans, Inc. v. Brown, 737 S.E.2d 640, 656–59 (W. Va. 2012) ("Quicken Loans I"), the court was presented with evidence that a loan was based on an inflated appraisal. But the loan also contained significant fees, a particularly high interest rate, and an undisclosed balloon payment. See id. So when the court found the loan to

principles of state contract law as we believe they would be applied by the West Virginia Supreme Court of Appeals in this context. See Horace Mann, 514 F.3d at 329.

Fortunately, the West Virginia courts have made very clear the standard for substantive unconscionability under state law: A contract term is substantively unconscionable only if it is both "one-sided" and "overly harsh" as to the disadvantaged party. See, e.g., Dan Ryan Builders, Inc. v. Nelson, 737 S.E.2d 550, 558 (W. Va. 2012); Genesis Healthcare, 729 S.E.2d at 221. The point is not to disturb the "reasonable allocation of risks or reasonable advantage because of superior bargaining power." Arnold v. United Cos. Lending Corp., 511 S.E.2d 854, 860 (W. Va. 1998) (quoting Unif. Consumer Credit Code 1974 § 5.108 cmt. 3), overruled on other grounds by Dan Ryan Builders, 737 S.E.2d 550. Rather, substantive unconscionability screens for cases in which a "gross imbalance, one-sidedness or lop-sidedness in a

---

be unconscionable because its "total cost . . . was exorbitant," its holding turned on much more than the principal amount of the loan. See id. at 659. And in Herrod v. First Republic Mortgage Corp., 625 S.E.2d 373, 379–81 (W. Va. 2005), although the court reversed summary judgment where it found evidence that the "house was worth at least $20,000 less than the amount for which it was mortgaged," its analysis concentrated singularly upon issues of fact relating to procedural unconscionability — namely, whether the loan was based on a fraudulent appraisal — and the decision never mentions substantive unconscionability. See id.

12

contract" will justify a court's refusal to enforce the agreement as written. Genesis Healthcare, 729 S.E.2d at 220.

We agree with the district court that under this standard, a mortgage agreement would not be deemed substantively unconscionable solely because it provides a borrower with more money than his home is worth. Whatever the pitfalls, receiving too much money from a bank is not what is generally meant by "overly harsh" treatment, and we have no reason to think that the West Virginia Supreme Court of Appeals would apply its standard in such a counterintuitive manner. As the district court noted, it is not the borrower but the bank that typically is disadvantaged by an under-collateralized loan. That is why borrowers may pay a premium for under- or non-collateralized loans, see Benjamin E. Hermalin & Andrew K. Rose, Risks to Lenders and Borrowers in International Capital Markets, in International Capital Flows 363, 369 (Martin Feldstein ed., 1999); why it is common practice for banks, as many borrowers can attest, to ensure that their real estate loans are for significantly less than property value, see Michael T. Madison et al., 1 Law of Real Estate Financing § 5:14 (2015); and why a generous mortgage loan is usually cause for celebration and not a lawsuit.

McFarland, with the support of multiple amici,[3] rejects that common-sense application of West Virginia's substantive unconscionability law, arguing that it fails to take account of the broader social and economic context. According to McFarland, the Wells Fargo Loan is but one example of a widespread practice of overvaluing homes and lending too much money that has contributed to a national home foreclosure crisis: When a borrower is bound to a mortgage that exceeds the value of his home, he is trapped, unable to refinance to obtain better terms or sell his home to relocate, and foreclosure is the result. It is that harm to borrowers and to public policy, McFarland argues, that renders mortgage loans in excess of home value substantively unconscionable under West Virginia law.

We certainly agree that consumers may be harmed, sometimes grievously, when they take on more mortgage debt than their homes are worth. Cf. McCauley v. Home Loan Inv. Bank, F.S.B., 710 F.3d 551, 559 n.5 (4th Cir. 2013) (finding in the context of a fraud claim that a borrower could be injured by an under-collateralized loan). And we have no reason to doubt that West Virginia's courts would acknowledge that disproportionate debt may be dangerous both for homeowners and for the broader

---

[3] McFarland is joined in this argument by amici curiae The National Consumer Law Center, AARP, The National Association of Consumer Advocates, and The Center for Responsible Lending.

economy.  See, e.g., IMF, Dealing with Household Debt, in Growth Resuming, Dangers Remain, World Economic Outlook 89, 96 (Apr. 2012) (economic downturns "are more severe when they are preceded by larger increases in household debt").  Indeed, we note that West Virginia already has decided to regulate by statute precisely the lending practices of which McFarland complains, with a law aimed squarely at predatory mortgage lending.  See W. Va. Code § 31-17-8(m)(8) (prohibiting "a primary or subordinate mortgage loan in a principal amount that . . . exceeds the fair market value of the property").

But here is where we disagree with McFarland:  The fact that a practice is harmful does not by itself make it substantively unconscionable as a matter of West Virginia contract law.  Rather, as noted above, substantive unconscionability is an equitable doctrine reserved for those cases in which a contract is "so one-sided that it has an overly harsh effect on the disadvantaged party."  Dan Ryan Builders, 737 S.E.2d at 558.  And an under-collateralized loan, though it ultimately may cause harm, cannot meet this standard, because it will benefit the borrower in at least some respects and operate to the detriment of the lender in others.  Here, for example, the Wells Fargo Loan provided McFarland with the money he needed to pay off approximately $40,000 of student and automobile debt, as he had hoped.  And while it undoubtedly exposed McFarland to

15

certain risks, it posed risks for the bank, as well: When a bank writes a mortgage for more money than a borrower's home is worth, it takes the chance that it will forfeit at least some of its capital in the event of a default.[4] So a loan in excess of home value does not accrue entirely to the lender's benefit, and thus lacks the kind of "gross imbalance, one-sidedness or lop-sidedness," id., and evident impropriety that West Virginia courts have identified in setting aside contract terms as substantively unconscionable. See, e.g., id. at 559–60 (striking down unilateral arbitration clause because it was wholly one-sided and unfair); U.S. Life Credit Corp. v. Wilson, 301 S.E.2d 169, 171–72 (W. Va. 1982) (invalidating provision in

---

[4] McFarland contends that today this risk is more illusory than real, given that mortgage lenders can sell their loans on the secondary market and remove them from their balance sheets. But as the Banks explain, they remain accountable to the purchasers of their loans, and in some circumstances even may have to repurchase loans that prove "defective." And indeed, many banks experienced a solvency crisis during the recent economic downturn because of the number of "bad loans" they had issued. See Eamonn K. Moran, Wall Street Meets Main Street: Understanding the Financial Crisis, 13 N.C. Banking Inst. 5, 55 (2009). We acknowledge that the growth of loan securitization in the years leading up to the financial crisis significantly affected the allocation of risk associated with under-collateralized loans. But that does not mean that banks are fully insulated from the consequences of bad loans, and it is enough here that loans in excess of home value continue to carry risk for all parties involved.

16

consumer loan agreement that waives debtor's statutory right to be free from publication of his indebtedness).

Our belief that the West Virginia Supreme Court of Appeals would not recognize loan size, by itself, as evidence of substantive unconscionability is confirmed when we consider the problems that would arise in fashioning a remedy in such circumstances. In the typical case, when what is challenged is a particular contract term — say, a rate of interest, or a prepayment penalty — courts may sever the unconscionable term or reform it to avoid an "unconscionable result." See W. Va. Code § 46A-2-121(1)(b). But here, the only way to avoid what McFarland alleges is the unconscionable feature of having been loaned too much money would be to cancel the loan agreement altogether — which would spare McFarland a foreclosure but also require that he return the loan principal to Wells Fargo, which is of course the very outcome he seeks to avoid. See Quicken Loans, Inc. v. Brown, 777 S.E.2d 581, 592 (W. Va. 2014) ("Quicken Loans II") (requiring return of loan principal as part of remedy for unconscionable loan agreement). The West Virginia Supreme Court of Appeals has been clear that "cancellation of the debt" — relieving McFarland of the obligation to repay his Wells Fargo Loan altogether — "is not a permissible remedy" in circumstances like these. See Quicken Loans II, 777 S.E.2d at 591. And with that off the table and no good alternative

17

proposed, we think it unlikely that the West Virginia Supreme Court of Appeals would reach out to create a new variant of substantive unconscionability for which there appears to be no sensible remedy. Cf. Mallet v. Pickens, 522 S.E.2d 436, 441 n.6 (W. Va. 1999) (interpreting West Virginia common law to avoid an "illogical, counterintuitive outcome").[5]

## 2.

McFarland also continues to press his alternative theory of substantive unconscionability: that his contract with Wells Fargo is substantively unconscionable under West Virginia law because the Wells Fargo Loan did not provide him a "net tangible benefit." Like the district court, we think it is clear that the "net tangible benefit" inquiry to which McFarland alludes is

---

[5] Like the district court, we acknowledge that some federal courts in West Virginia appear to have reached a different conclusion, holding or assuming, without significant analysis, that a mortgage's size may be evidence of substantive unconscionability. See, e.g., Petty v. Countrywide Home Loans, Inc., No. 3:12-cv-6677, 2013 WL 1837932, at *5 (S.D.W. Va. May 1, 2013). The district court distinguished those cases on the ground that they arose prior to discovery, and that early dismissal of the cases would have been inconsistent with the WVCCPA's policy of allowing unconscionability claims to proceed through discovery. See McFarland, 19 F. Supp. 3d at 672–73 (citing W. Va. Code § 46A-2-121(2) ("[T]he parties shall be afforded a reasonable opportunity to present evidence . . . to aid the court in making the [unconscionability] determination.")). And regardless, we agree with the district court that the cases are unpersuasive on the merits, see id. at 672, decided without sustained examination of the issue and providing no reason to think that West Virginia would apply its law in this manner.

18

irrelevant to substantive unconscionability under West Virginia law.

McFarland appears to have borrowed the "net tangible benefit" test he proposes from West Virginia's anti-predatory lending statute, which prohibits mortgage brokers from charging certain fees "unless the new loan has a reasonable, tangible net benefit to the borrower considering all of the circumstances." See W. Va. Code § 31-17-8(d). But McFarland has not alleged that the Wells Fargo Loan violated this provision, nor pointed to any West Virginia case law borrowing its language and applying it in the very different context of a § 46A-2-121 "unconscionable contract" claim. Nor can we see any reason why the "tangible net benefit" standard would be transposed to the unconscionability context. Again, unconscionability under West Virginia law is concerned with whether a loan agreement is so "one-sided" and "overly harsh" that it should not be enforced as written. Genesis Healthcare, 729 S.E.2d at 221. Whether a contract provides either or both parties with a "tangible net benefit" is an entirely separate question; contracts are made all the time that include terms that might not provide either party with a "net tangible benefit" yet remain fair and even-handed — or at least fair and even-handed enough not to be considered substantively unconscionable under West Virginia's standard. Cf. Pingley v. Perfection Plus Turbo-Dry, LLC, 746

19

S.E.2d 544, 551–52 (W. Va. 2013) (contract between homeowner and sewage removal company not substantively unconscionable even though it disclaimed liability for damages caused by mold); State ex rel. AT & T Mobility, LLC v. Wilson, 703 S.E.2d 543, 550–51 (W. Va. 2010) (arbitration agreement's ban on class actions does not render it substantively unconscionable).[6]

## III.

We turn now to McFarland's contention that the district court erred by dismissing his unconscionable contract claim solely on the ground that he could not show substantive unconscionability. According to McFarland, neither of his unconscionable contract claims — that the loan agreement itself was unconscionable when made, or that it was induced by unconscionable means — could be dismissed under West Virginia law without some assessment of the fairness of the process leading up to contract formation.

We agree, but only in part. Like the district court, we think West Virginia law clearly requires a showing of

---

[6] The Banks argue in the alternative that even if the "tangible net benefit" standard were applicable here, it would be satisfied, given that the Wells Fargo Loan allowed McFarland to pay off his student and vehicle debt and thus reduce his total monthly loan payments. Because we find that West Virginia law does not call for an inquiry into "tangible net benefit" in this context, we need not address that contention.

20

substantive unconscionability to make out a traditional claim that a contract is itself unconscionable. But we think it is equally plain that the WVCCPA authorizes a stand-alone unconscionable inducement claim which, unlike its common-law antecedents, may be based entirely on evidence going to process and requires no showing of substantive unfairness.

**A.**

Having found that McFarland could not show substantive unconscionability, the district court granted the Banks summary judgment on McFarland's unconscionable contract claim. No further analysis was required, the district court held, because under West Virginia law, a claimant must prove substantive unconscionability in order to prevail on a claim of unconscionable contract.

As to McFarland's first unconscionable contract claim — that the loan agreement itself was unconscionable when made, see W. Va. Code § 46A-2-121(1)(a) (courts may refuse to enforce agreement that is "unconscionable at the time it was made") — we agree. West Virginia law clearly requires evidence of both substantive and procedural unconscionability to make out this traditional unconscionability claim, now codified under West Virginia Code § 46A-2-121(1)(a). See, e.g., Genesis Healthcare, 729 S.E.2d at 221; Arnold, 511 S.E.2d at 861 n.6. Given its holding that McFarland could not show the requisite substantive

21

unconscionability — with which we agree — the district court properly awarded summary judgment to the Banks on McFarland's claim that his contract with Wells Fargo was unconscionable at the time it was made.

McFarland's contrary argument rests on cases in which the West Virginia Supreme Court of Appeals has instructed state courts against dismissing unconscionable contract claims when there are outstanding issues of fact relating to procedural unconscionability.  See, e.g., Herrod, 625 S.E.2d at 379 (existence of questions of fact regarding grossly unequal bargaining power precludes resolution by summary judgment). That policy is driven by a practical concern that unconscionability claims are context-specific, so that evidence of procedural unconscionability may in some cases also inform the substantive unconscionability analysis.  See Quicken Loans I, 737 S.E.2d at 657; Arnold, 511 S.E.2d at 860–61.  Whatever its merits, that guidance is a matter of state civil procedure, not substantive law, and does not bind a federal court sitting in diversity.  Federal courts apply federal rules of procedure. See Rowland v. Patterson, 852 F.2d 108, 110 (4th Cir. 1988). And under Federal Rule of Civil Procedure 56, the only requirement for summary judgment is that the movant be entitled to judgment as a matter of law.  Because McFarland could not succeed on his claim that his contract with Wells Fargo was

22

unconscionable when entered even accepting as true all of his allegations regarding the bargaining process, the district court properly awarded summary judgment to the Banks.

**B.**

We reach a different conclusion with respect to McFarland's claim of unconscionable inducement. Though the question is not fully settled under West Virginia law, we believe the West Virginia Supreme Court of Appeals would rule that the WVCCPA authorizes a stand-alone claim for unconscionable inducement, predicated on the process leading up to contract formation and independent of any showing of substantive unconscionability.

The terms of the WVCCPA are plain enough: Section 46A-2-121 authorizes a court to refuse enforcement of an agreement on one of two distinct findings: that the agreement was "unconscionable at the time it was made, or [that it was] induced by unconscionable conduct." W. Va. Code § 46A-2-121(1)(a) (emphasis added). What makes the question interesting is the interplay between West Virginia's unconscionability common law and the codification of an unconscionability provision in the WVCCPA. At common law, some showing of substantive unconscionability is a prerequisite to an unconscionability claim. And it is settled as a matter of West Virginia law that the same requirement applies to claims under the first part of § 46A-2-121(1)(a), alleging that a contract

23

was "unconscionable at the time it was made." See Credit Acceptance Corp. v. Front, 745 S.E.2d 556, 559, 564 (W. Va. 2013). So the question is whether the second part of § 46A-2-121(1)(a), covering contracts "induced by unconscionable conduct," is to be read as diverging from this traditional understanding and authorizing a claim for unconscionable inducement that does not require a showing of substantive unconscionability. See id. at 571 (Ketchum, J., concurring) (noting that legislature has suggested that substantive unconscionability is not required and urging court to clarify the matter).

For several reasons, we think the West Virginia Supreme Court of Appeals would answer this question in the affirmative. First, it has come very close to doing so already. In its 2012 decision in Quicken Loans I, the court sustained findings of "unconscionability in the inducement" based entirely on conduct predating acceptance of the contract and allegations going to the fairness of the process, without regard to substantive unconscionability: a "false promise" of refinancing, the sudden introduction of a balloon payment at closing, a negligently conducted appraisal review, and other similar factors. 737 S.E.2d at 657–58. Because the court's analysis of unconscionable inducement was only one portion of its overall unconscionability analysis — which also reflected that the loan

24

agreement included several substantively unconscionable terms, id. at 658 — we will err on the side of caution and treat it as something less than a clear holding on the question. But at a minimum, it is a strong indication that the West Virginia Supreme Court of Appeals understands the WVCCPA to allow for unconscionable inducement claims separate and apart from substantive unconscionability.

Second, the West Virginia Supreme Court of Appeals takes a plain meaning approach to statutory construction: "Where the language of a statutory provision is plain, its terms should be applied as written." DeVane v. Kennedy, 519 S.E.2d 622, 632 (W. Va. 1999). And the language of the WVCCPA fits the bill. It expressly authorizes courts to refuse to enforce an agreement that they find "to have been unconscionable at the time it was made, or to have been induced by unconscionable conduct." W. Va. Code § 46A-2-121(1)(a) (emphasis added). The word "or" unmistakably signals two distinct causes of action when it comes to consumer loans: one for unconscionability in the loan terms themselves, and one for unconscionable conduct that causes a party to enter into a loan. If the legislature had intended to require both substantive and process-related unconscionability, subjecting creditors to liability only where an agreement itself is unconscionable, then all it had to do was replace the "or" with an "and." Cf. U.S. Life, 301 S.E.2d at 173 (engaging in

25

same plain meaning analysis of § 46A-2-121(1)(a) and rejecting defendant's argument that it allows claims only for unconscionable inducement and not also for substantively unconscionable contract terms).

Finally, the West Virginia courts have advised that the comments to the Uniform Consumer Credit Code ("UCCC") are "highly instructive" when it comes to construing § 46A-2-121 because its unconscionability provisions are "identical" to those of the statute. Quicken Loans I, 737 S.E.2d at 656–57. And the comments to the UCCC not only indicate that a stand-alone unconscionable inducement claim exists, but also explain its purpose:

> Subsection (1), as does UCC Section 2-302, provides that a court can refuse to enforce or can adjust an agreement or part of an agreement that was unconscionable on its face at the time it was made. However, many agreements are not in and of themselves unconscionable according to their terms, but they would never have been entered into by a consumer if unconscionable means had not been employed to induce the consumer to agree to the contract. It would be a frustration of the policy against unconscionable contracts for a creditor to be able to utilize unconscionable acts or practices to obtain an agreement. Consequently subsection (1) also gives to the court the power to refuse to enforce an agreement if it finds as a matter of law that it was induced by unconscionable conduct.

Unif. Consumer Credit Code 1974 § 5.108 cmt. 1. That is McFarland's argument in a nutshell: that regardless of whether his loan agreement with Wells Fargo is "in and of [itself]

26

unconscionable according to [its] terms" — that is, substantively unconscionable — § 46A-2-121(1)(a) allows for a finding of unconscionability if "unconscionable means [were] employed to induce [him] to agree to the contract." Id. It appears that the West Virginia legislature adopted precisely this approach, and we think that the West Virginia Supreme Court of Appeals would so hold.

Reading § 46A-2-121(1)(a) to allow for a stand-alone unconscionable inducement claim, we should note, is in no way inconsistent with West Virginia precedent holding that procedural unconscionability alone cannot show that a contract was itself unconscionable when made. The kind of procedural unconscionability that is required (in combination with substantive unconscionability) to render a contract or contract term unconscionable in and of itself may turn on such "status" factors as the "relative positions of the parties, the adequacy of the bargaining position, [and] the meaningful alternatives available to the plaintiff." Quicken Loans I, 737 S.E.2d at 657. We of course leave to West Virginia law the precise contours of an unconscionable inducement claim, but it appears that it will turn not on status considerations that are outside the control of the defendant, but instead on affirmative misrepresentations or active deceit. See id. at 653–55, 657 (unconscionable inducement findings include lender's concealment

27

of balloon payment and false promise to allow refinancing). As McFarland concedes, in other words, the standard for unconscionable inducement is different and higher than that for procedural unconscionability.

Accordingly, we hold that the district court erred in dismissing McFarland's claim of unconscionable inducement on the ground that substantive unconscionability is a necessary predicate of a finding of unconscionability under the WVCCPA. We take no view as to the underlying merits of McFarland's unconscionable inducement claim, and remand to the district court to consider McFarland's evidence that his loan agreement was "induced by misrepresentations" and determine whether it allows him to proceed against the Banks.[7]

---

[7] In a separate count of his complaint, McFarland sought to hold the Banks liable for unconscionable contract under agency and joint venture theories. The district court dismissed that count of the complaint on the ground that McFarland had failed to make the necessary showing of unconscionability. McFarland, 19 F. Supp. 3d at 674 ("Here, joint venture and agency may not be used to impose liability for unconscionable contract [], as that claim is dismissed."). Accordingly, we vacate that portion of the district court's judgment, as well, and remand for reconsideration of McFarland's joint venture and agency claims in light of this opinion.

**IV.**

For the foregoing reasons, we affirm the judgment of the district court in part and vacate and remand in part.

<u>AFFIRMED IN PART,</u>
<u>VACATED IN PART,</u>
<u>AND REMANDED</u>