# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Rosanna S. Crum,**
**Plaintiff Below, Petitioner**

**vs) No. 15-1131** (Mingo County 15-C-68)

**Michael Thornsbury and Thomas McComas,**
**Defendants Below, Respondents**

**and**

**Rosanna S. Crum,**
**Plaintiff Below, Petitioner**

**vs) No. 15-1219** (Mingo County 15-C-68)

**John Mark Hubbard, Greg "Hootie" Smith,**
**and David Baisden,**
**Defendants Below, Respondents**

**FILED**

**October 28, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Rosanna S. Crum, by counsel Richard A. Robb, appeals the October 13, 2015; October 16, 2015; and December 7, 2015, orders of the Circuit Court of Mingo County dismissing her claims against respondents. Respondent Michael Thornsbury, by counsel William R. Slicer and Philip B. Sword, filed his response. Respondent Thomas McComas, by counsel John R. Teare, Jr. submitted a summary response. Respondents John Mark Hubbard, Greg "Hootie" Smith, and David Baisden by counsel Carter R. Elkins, filed their response.[1] Petitioner filed a reply to each of these responses.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1] At all times relevant to the underlying action, Michael Thornsbury was the judge of the Circuit Court of Mingo County and John Mark Hubbard, Greg "Hootie" Smith, and David Baisden were members of the Mingo County Commission.

1

On April 3, 2013, Walter Eugene Crum, Sheriff of Mingo County, was killed in the line of duty while in his vehicle. On April 4, 2013, Respondents Hubbard, Smith, Baisden, and Thornsbury allegedly went to petitioner's home and assured her that "they would take care of all funeral and burial costs." Sheriff Crum's services were performed by Chafin Funeral Home,[2] but respondents did not pay for these services. When petitioner asked the funeral home about a headstone for Sheriff Crum, she was informed that she had to pay the outstanding funeral bill before she could purchase a headstone. According to petitioner, she approached two of the county commissioners regarding payment, one of whom told her that they would not pay the bill while the other reportedly avoided her. Petitioner paid the funeral costs.[3]

Petitioner filed her complaint on or about April 2, 2015, against Respondents Chafin Funeral Home, Inc., John Mark Hubbard, Greg "Hootie" Smith, David Baisden, Michael Thornsbury, and Thomas McComas. Petitioner stated in her complaint that Respondents Hubbard, Smith, and Baisden, all members of the Mingo County Commission, in addition to Michael Thornsbury, came to petitioner's home and assured her they would take care of all funeral and burial costs related to Sheriff Crum's death. According to the complaint, Sheriff McComas and Tib Cook of Chafin Funeral Home planned the elaborate funeral, with costs exceeding $30,000. [4] As a result of the individual respondents' alleged refusal to pay for the funeral services, petitioner asserted numerous claims against them, including breach of contract, negligence, and detrimental reliance. She also alleged that the funeral home's conduct amounted to negligence, breach of an implied contract, and tortious breach of an implied contract. As a result, she requested damages of "at least" $30,000 and asked that "any award be joint and several . . . as these [respondents] were acting in concert explicitly or implicitly in these matters. She also asks for an award of damages for the emotional distress [respondents'] conduct has caused her." She also requests punitive damages "as she suspects because many of these same

---

[2] The Circuit Court of Mingo County's grant of Chafin Funeral Home's motion to dismiss in the same underlying action is the subject of Case Number 15-1214 before this Court.

[3] In its October 13, 2015, order granting Respondent McComas's motion to dismiss, the circuit court stated that the Public Safety Officers' Benefit Act provided for a line of duty death benefit of $328,612.73 for law enforcement at the time of Sheriff Crum's death. Further, the West Virginia Fire, EMS, and Law Enforcement Survivor Benefit Acts provided a benefit of $50,000. The West Virginia Workers' Compensation system provided for the payment of funeral services for any employee killed in the line of duty. However, it noted that "[w]hether those funds and payments were ever paid to [petitioner was] not a matter of record."

[4] Petitioner alleges that the funeral home and Sheriff McComas, the Cabell County Sheriff who was the head of the state sheriff's association at the time of Sheriff Crum's death, planned an elaborate and costly funeral without petitioner's permission. The Sheriff's Association arranged for a number of services related to the funeral at no cost to petitioner, including providing a rotating honor guard at all times that the remains were open to public view, providing a 21-gun salute at the service, providing a helicopter to fly over the service, and providing deputies from around the state to patrol Mingo County during the grieving period so that Mingo County deputies could participate in the services.

2

[respondents] have since his death made her late husband a scapegoat[.]"

On April 30, 2015, Sheriff McComas filed a notice of special appearance and a motion to dismiss. Michael Thornsbury filed his motion to dismiss on August 13, 2015; Respondents Hubbard, Smith, Baisden, and Chafin Funeral Home filed their respective motions to dismiss on or about October 9, 2015. Thereafter, the circuit court dismissed each defendant below.

In its October 13, 2015, order dismissing Sheriff McComas, the circuit court stated that the claims against Sheriff McComas were not clearly discernable within the four corners of the complaint but appeared to include a claim for breach of oral contract to pay for funeral services, breach of an implied contract to pay for funeral services, interference in the oral contract between petitioner and the four public officials to pay for the funeral services, and negligence. The circuit court concluded there was no equitable principle that justifies imposing any burden for the funeral costs on Sheriff McComas, there was no evidence to support petitioner's claims of an oral or implied contract to pay for the funeral, and the damages sought are the funeral expenses that petitioner was legally responsible to pay regardless of any alleged negligent act or omission on the part of Sheriff McComas. On October 16, 2015, the circuit court dismissed Respondent Thornsbury, finding that petitioner did not ask Thornsbury about the bill she received from the funeral home and she had paid the bill. The circuit court went on to find that if the allegations in the complaint are taken in the light most favorable to petitioner, she still has not stated a claim upon which relief can be granted.

On December 7, 2015, the circuit court entered its order dismissing the individual county commissioners – Hubbard, Smith, and Baisden. In its order, the circuit court incorporated by reference the previously entered orders dismissing the co-defendants below. It found that the statute of frauds applied, citing the fact that petitioner did not allege that Hubbard, Smith, and Baisden ever reduced the promise to cover funeral costs to writing. It went on to state that "a promise to make a gift in the future or to assist in a time of need is not enforceable and does not constitute a contract." Further, it found that "the promise to make a gift . . . in this matter is not a valid contract as it lacked consideration and mutual assent." The circuit court also found there was no unjust enrichment for Hubbard, Smith, and Baisden, as it previously found with regard to Thornsbury. Petitioner appeals from these dismissal orders.

"Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995). "The circuit court, viewing all the facts in a light most favorable to the nonmoving party, may grant the motion only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his[, her, or its] claim which would entitle him[, her, or it] to relief.' Syl. pt. 3, in part, *Chapman v. Kane Transfer Co., Inc.,* 160 W.Va. 530, 236 S.E.2d 207 (1977), *citing Conley,* 355 U.S. at 45–46, 78 S.Ct. at 102, 2 L.Ed.2d at 84." *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. at 776, 461 S.E.2d at 522.

Petitioner asserts nearly identical assignments of error against the respondents herein. First, she argues that respondents breached their contracts with petitioner by assuring her that they would take care of the costs of the services but then refusing to do so. According to petitioner, she allowed respondents to plan a more elaborate and expensive funeral than she or her family would have arranged based upon respondents' assurances that they would cover the

3

costs of the same. She asserts that she acquiesced and relied to her detriment on those representations, so there was a contractual relationship. As part of this argument, she contends that respondents enjoyed the benefits of "public glory" honoring Sheriff Crum but caused petitioner "financial detriment."

The circuit court order dismissing Respondent Thornsbury states that petitioner did not ask Thornsbury about the bill she received from the funeral home and that if the allegations set forth in the complaint are taken in the light most favorable to petitioner she had not stated a claim upon which relief could be granted. The circuit court also held that petitioner did not offer any consideration in exchange for the alleged promise to pay for Sheriff Crum's funeral services and costs, so no oral contract could have existed. It further stated that a promise to make a gift of help in a time of need is not enforceable and does not create a contract. In its order dismissing Respondents Hubbard, Smith, and Baisden, the circuit court found that the statute of frauds applied and that the alleged promise by those respondents to take care of funeral costs was not reduced to writing. Further, it found that such promise was not supported by any consideration.[5] With regard to payment of the funeral home bill, petitioner alleged that she asked Baisden why he and the others had not paid that bill, he responded that she knew they could not do that. She also stated that when she asked Smith, he "ignored her." She admitted in her complaint that she did not approach the other respondents about such payment.

""""The fundamentals of a legal contract are competent parties, legal subject matter, valuable consideration and mutual assent. There can be no contract if there is one of these essential elements upon which the minds of the parties are not in agreement." Syllabus Point 5, *Virginian Export Coal Co. v. Rowland Land Co.,* 100 W.Va. 559, 131 S.E. 253 (1926).' Syllabus point 3, *Dan Ryan Builders, Inc. v. Nelson,* 230 W.Va. 281, 737 S.E.2d 550 (2012)." Syl. Pt. 4, *State ex rel. AMFM, LLC v. King*, 230 W.Va. 471, 740 S.E.2d 66 (2013). Further, "'[a] promise or contract where there is no valuable consideration, and where there is no benefit moving to the promisor or damage or injury to the promisee, is void.' Syllabus Point 2, *Sturm v. Parish,* 1 W.Va. 125 (1865)." Syl. Pt. 4, *Dan Ryan Builders, Inc.*, 230 W.Va. at 282, 737 S.E.2d at 551. Nowhere in petitioner's complaint does she allege that there was any consideration for respondents' alleged promise to cover the costs of Sheriff Crum's funeral. Further, her counsel specifically disavowed any claim for unjust enrichment before the circuit court. She now argues that respondents enjoyed the glory of the services without paying for them. However, petitioner's assertion on appeal is insufficient consideration for an alleged contract to pay for costs associated with Sheriff Crum's services. In addition, despite her contention that the cost of the extravagant services far exceeded what she or her family would have selected, the bill contained in the record before this Court shows that the vast majority of the cost of Sheriff Crum's funeral was attributable to a single item – the casket. Petitioner does not allege in her complaint or before this Court that she did not select that casket or that she objected to the selection of the same. For

---

[5] Petitioner's complaint alleges that Respondent McComas was aware of the assurances by the other respondents to cover the costs of Sheriff Crum's services. However, in her complaint she does not allege that he entered into any written or oral contract to assist with these costs. Therefore, while she asserts such error on appeal, it does not appear from petitioner's vague complaint that she alleged breach of contract as against McComas.

4

these reasons, we find no error in the circuit court's dismissal of petitioner's claim of breach of contract against these respondents.

Petitioner next alleges that each of these respondents was negligent. With regard to Respondents Thornsbury, Hubbard, Smith, and Baisden, she claims that they were negligent by assuring her they would assume the costs of her slain husband's funeral and freely assuming a duty but failing to honor that duty. As against Respondent McComas, she contends that he voluntarily assumed the duty to arrange the funeral beyond petitioner's financial means and then abandoned her. Aside from the specific contract arguments, petitioner's arguments on this issue greatly resemble the arguments set forth with regard to the first assignment of error, particularly since respondents' alleged negligence revolves around the alleged promise to pay for the services and planning the same.

As this Court has stated, "before one can recover under a tort theory of liability, he or she must prove each of the four elements of a tort: duty, breach, causation, and damages." *Carter v. Monsanto Co.*, 212 W.Va. 732, 737, 575 S.E.2d 342, 347 (2002). In the instant matter, while petitioner generally alleges that respondents assumed a duty, her complaint falls short on that element. Instead, the complaint alleges that the county officials "knew they were making promises they could never kept [sic] and knew or should have known they were increasing the costs for [petitioner]." She also points to Respondent McComas's conduct in "saddl[ing petitioner] with these costs from her husband's funeral . . . ." In addition to the cost of the casket being the greatest expense, constituting more than half of the funeral home bill, petitioner has not set forth the costs of the funeral she would have arranged but for respondents' involvement. These allegations fail to set forth a duty on the part of any of these respondents, and without a duty, petitioner cannot prove negligence. Syl. Pt. 3, *Aikens v. Debow*, 208 W.Va. 486, 541 S.E.2d 576 (2000). Therefore, we find no error in the circuit court's dismissal of petitioner's negligence claim.

Although petitioner argues she did not have a contract with the funeral home, in her final assignment of error, petitioner contends that the circuit court erred in granting respondents' respective motions to dismiss in spite of their tortious interference of contract if such contract existed. She contends that the funeral home acted upon the assurances of payment made by Respondents Thornsbury, Hubbard, Smith, and Baisden, which amounted to tortious interference with that contract. She also asserts that Respondent McComas tortiously interfered with that contract by running up the costs of the funeral beyond her means to pay for the same. As this Court has previously stated, "[t]o establish prima facie proof of tortious interference, a plaintiff must show: (1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages." Syl. Pt. 2, *Torbett v. Wheeling Dollar Sav. & Trust Co.*, 173 W.Va. 210, 314 S.E.2d 166 (1983). As set forth above, while petitioner asserts that respondents planned a much more elaborate funeral service than she would have planned, the bulk of the funeral home bill is the casket and petitioner has failed to set forth any information as to the services she would have selected. While it is unquestionable that Sheriff Crum's death was unexpected, with death come the costs associated with burial and/or cremation. Further, petitioner cannot argue that there was no contract with the funeral home while also arguing that respondents interfered with such contract causing harm. For these

5

reasons, we find no error in the circuit court's dismissal of petitioner's tortious interference claims against respondents.

For these reasons, we find no error in the circuit court's finding that respondents were entitled to the dismissal of petitioner's claims against them.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 28, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

**DISSENTING:**

Justice Robin Jean Davis