# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Rosanna S. Crum,**
**Plaintiff Below, Petitioner**

**FILED**

**October 28, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 15-1214** (Mingo County 15-C-68)

**Chafin Funeral Home, Inc.,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Rosanna S. Crum, by counsel Richard A. Robb, appeals the November 9, 2015, order of the Circuit Court of Mingo County dismissing her claims against Respondent Chafin Funeral Home, Inc.. Respondent Chafin Funeral Home, Inc., by counsel Michelle Roman Fox and Geoffry A. Haddad, filed its response, to which petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On April 3, 2013, Walter Eugene Crum, Sheriff of Mingo County, was killed in the line of duty while in his vehicle. On April 4, 2013, respondents John Hubbard, Greg "Hootie" Smith, David Baisden, and Michael Thornsbury allegedly went to petitioner's home and assured her that "they would take care of all funeral and burial costs." Sheriff Crum's services were performed by Respondent Chafin Funeral Home,[1] but no payments were made to the funeral home for those costs by Hubbard, Smith, Baisden, or Thornsbury.[2] When petitioner asked respondent about a

---

[1] The Circuit Court of Mingo County's grant of the motions to dismiss filed by Thomas McComas, Michael Thornsbury, John Hubbard, Greg "Hootie" Smith, and David Baisden in the same underlying action are the subject of a joint memorandum decision in Case Numbers 15-1131 and 15-1219 before this Court.

[2] Petitioner alleges that the funeral home and Sheriff McComas, the Cabell County Sheriff who was the head of the state sheriff's association at the time of Sheriff Crum's death, planned an elaborate and costly funeral without petitioner's permission. The Sheriff's Association arranged for a number of services related to the funeral at no cost to petitioner, including providing a rotating honor guard at all times that the remains were open to public view, providing a 21-gun salute at the service, providing a helicopter to fly over the service, and (continued . . .)

headstone for Sheriff Crum, she was informed that she had to pay the outstanding funeral bill before she could purchase a headstone. According to petitioner, she approached two of the county commissioners regarding payment, one of whom told her that they would not pay the bill while the other reportedly avoided her. Petitioner paid the funeral costs.[3]

Petitioner filed her complaint on or about April 2, 2015, against Respondents Chafin Funeral Home, Inc., Hubbard, Smith, Baisden, Thornsbury, and McComas. Petitioner stated in her complaint that Respondents Hubbard, Smith, and Baisden, all members of the Mingo County Commission, in addition to former Judge Thornsbury, came to petitioner's home and assured her they would take care of all funeral and burial costs related to Sheriff Crum's death. According to the complaint, Sheriff McComas and "Tib" Cook of Chafin Funeral Home planned the elaborate funeral, with costs exceeding $30,000. As a result of the individuals' alleged refusal to pay for the funeral services, petitioner asserted numerous claims against them, including breach of contract, negligence, and detrimental reliance. She also alleged that respondent's conduct amounted to negligence, breach of an implied contract, and tortious breach of an implied contract. As a result, she requested damages of "at least" $30,000 and asked that "any award be joint and several . . . as these [respondents] were acting in concert explicitly or implicitly in these matters. She also ask[ed] for an award of damages for the emotional distress [respondents'] conduct has caused her." In addition, petitioner requested punitive damages "as she suspects because many of these same [respondents] have since his death made her late husband a scapegoat[.]"

On April 30, 2015, Sheriff McComas filed a notice of special appearance and a motion to dismiss. Michael Thornsbury filed his motion to dismiss on August 13, 2015; Respondents Hubbard, Smith, Baisden, and Chafin Funeral Home filed their respective motions to dismiss on or about October 9, 2015. Thereafter, the circuit court dismissed each defendant below.

In its October 13, 2015, order dismissing Sheriff McComas, the circuit court stated that the claims against Sheriff McComas were not clearly discernable within the four corners of the complaint but appeared to include a claim for breach of oral contract to pay for funeral services, breach of an implied contract to pay for funeral services, interference in the oral contract between petitioner and the four public officials to pay for the funeral services, and negligence. The circuit court concluded there was no equitable principle that justifies imposing any burden for the funeral costs on Sheriff McComas, there was no writing to support petitioner's claims of

---

providing deputies from around the state to patrol Mingo County during the grieving period so that Mingo County deputies could participate in the services.

[3] In its October 13, 2015, order granting Sheriff McComas's motion to dismiss, the circuit court stated that the Public Safety Officers' Benefit Act provided for a line of duty death benefit of $328,612.73 for law enforcement at the time of Sheriff Crum's death. Further, the West Virginia Fire, EMS, and Law Enforcement Survivor Benefit Acts provided a benefit of $50,000. The West Virginia Workers' Compensation system provided for the payment of funeral services for any employee killed in the line of duty. However, it noted that "[w]hether those funds and payments were ever paid to [petitioner was] not a matter of record."

2

an oral or implied contract to pay for the funeral, and the damages sought are the funeral expenses that petitioner was legally responsible to pay regardless of any alleged negligent act or omission on the part of Sheriff McComas. On October 16, 2015, the circuit court dismissed Respondent Thornsbury, finding that petitioner did not ask Thornsbury about the bill she received from the funeral home and she had paid the bill. It went on to find that if the allegations in the complaint are taken in the light most favorable to petitioner, she still has not stated a claim upon which relief can be granted.

On November 9, 2015, the circuit court entered its order dismissing Chafin Funeral Home. Therein, the circuit court concluded that Steven Cook of the funeral home signed the "Statement of Funeral Goods and Services Selected" ("Statement") as did petitioner. It found that such Statement was a written contract between petitioner and respondent. It also concluded that there was consideration paid for a valid written contract between the parties and that all services and goods for the burial and gravesite were paid by petitioner. Therefore, it found that petitioner failed to state a claim against Chafin Funeral Home upon which relief could be granted.

On December 7, 2015, the circuit court entered its order dismissing the individual county commissioners – Hubbard, Smith, and Baisden. In its order, the circuit court incorporated by reference the previously entered orders dismissing the co-defendants below. It found that the statute of frauds applied, citing the fact that petitioner did not allege that Hubbard, Smith, and Baisden ever reduced the promise to cover funeral costs to writing. It went on to state that "a promise to make a gift in the future or to assist in a time of need is not enforceable and does not constitute a contract." Further, it found that "the promise to make a gift . . . in this matter is not a valid contract as it lacked consideration and mutual assent." The circuit court also found there was no unjust enrichment for Hubbard, Smith, and Baisden, as it previously found with regard to Thornsbury. Petitioner appeals from these dismissal orders.

"Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995). "The circuit court, viewing all the facts in a light most favorable to the nonmoving party, may grant the motion only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his[, her, or its] claim which would entitle him[, her, or it] to relief.' Syl. pt. 3, in part, *Chapman v. Kane Transfer Co., Inc.*, 160 W.Va. 530, 236 S.E.2d 207 (1977), *citing Conley*, 355 U.S. at 45–46, 78 S.Ct. at 102, 2 L.Ed.2d at 84." *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. at 776, 461 S.E.2d at 522.

First, petitioner contends that no contract existed with the funeral home. In support of this statement, she asserts that the funeral home was fully aware that third parties agreed to pay the funeral costs for Sheriff Crum's services and proceeded to stage an elaborate service far beyond what petitioner would have arranged or could afford. Petitioner claims that when the third parties reneged on paying those costs, the funeral home forced her to pay by refusing to provide the tombstone for Sheriff Crum's grave until payment was made. In her argument before this Court, petitioner admits that respondent "may be" entitled to some compensation for its services but disputes the amount respondent charged because she asserts that she did not agree to it.

3

"""""The fundamentals of a legal contract are competent parties, legal subject matter, valuable consideration and mutual assent. There can be no contract if there is one of these essential elements upon which the minds of the parties are not in agreement." Syllabus Point 5, *Virginian Export Coal Co. v. Rowland Land Co.,* 100 W.Va. 559, 131 S.E. 253 (1926).' Syllabus point 3, *Dan Ryan Builders, Inc. v. Nelson,* 230 W.Va. 281, 737 S.E.2d 550 (2012)." Syl. Pt. 4, *State ex rel. AMFM, LLC v. King*, 230 W.Va. 471, 740 S.E.2d 66 (2013). While petitioner argues that she did not agree to the costs, included in the record before this Court is the Statement petitioner does not dispute signing. Included in that Statement are itemized costs, including a nearly $13,000 casket and $3,175 for total services. Other items contained on the Statement are charges for copies of the death certificate, newspaper publication of the obituary, an outer burial container, and a register book package. Immediately above petitioner's signature on the Statement is the following language: "I (we) have read (or been read) the above, accept and approve same, and jointly and severally promise to make full payment. Receipt of a copy of this Statement is acknowledged." According to respondent, petitioner paid for the services and items set forth in that Statement and for the headstone she selected. Petitioner does not complain about the services rendered by respondent or claim that it failed to perform its duties under the Statement, which serves as a contract between these parties. Further, she does not dispute the necessity or amount of charges for the preparation of the body, embalming, and use of the hearse. Considering all of the allegations in the complaint in the light most favorable to petitioner insomuch as she does not dispute that she signed the Statement or that respondent provided the services and items set forth in the Statement, we find that the circuit court did not err in finding that the Statement constituted a valid contract between these parties.

Petitioner next asserts that respondent was negligent because it voluntarily assumed a duty with third parties to arrange a funeral exceeding the cost that petitioner would have arranged and in which she played no part. She contends that respondent is negligent to the extent the costs went beyond what she or her family members would have arranged. Thus, she asserts that the circuit court erred in finding that respondent was not negligent. "An action in negligence is based in tort law and is brought to recover damages from a party whose acts or omissions constitute the proximate cause of a claimant's injury. *Sewell v. Gregory*, 179 W.Va. 585, 587, 371 S.E.2d 82, 84 (1988)." *Strahin v. Cleavenger*, 216 W.Va. 175, 183, 603 S.E.2d 197, 205 (2004). As this Court has stated, "before one can recover under a tort theory of liability, he or she must prove each of the four elements of a tort: duty, breach, causation, and damages." *Carter v. Monsanto Co.*, 212 W.Va. 732, 737, 575 S.E.2d 342, 347 (2002). Regardless of any alleged assurances made in the presence of "Tib" Cook of the respondent funeral home, petitioner was the one who undisputedly signed the Statement agreeing to pay for all costs. Petitioner does not state in her complaint or before this Court how respondent should have been aware of her ability to pay for funeral services. She also fails to set forth an affirmative duty on the part of respondent to ascertain her ability to pay for services when she signed the Statement agreeing to pay for such services. In addition, she admits that she paid for all of the services contained in the Statement. Therefore, we find that the circuit court did not err in finding that petitioner failed to set forth actionable claims for negligence against respondent.

Petitioner's final argument is that "[a]ssuming the promises to pay by the th[e] third parties amounted to a contract between them and the widow, the funeral home's arrangement of the funeral services amounted to a tort[i]ous breach of contract, and the lower court erred in

4

finding it had not." This Court addressed petitioner's arguments regarding a contractual relationship between herself and Sheriff McComas, Michael Thornsbury, John Hubbard, Greg "Hootie" Smith, and David Baisden in the memorandum decision for Case Numbers 15-1131 and 15-1219.[4] In that memorandum decision, this Court found no error in the circuit court's finding that no contract existed between petitioner and those individual defendants. As this Court has previously stated, "[t]o establish prima facie proof of tortious interference, a plaintiff must show: (1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages." Syl. Pt. 2, *Torbett v. Wheeling Dollar Sav. & Trust Co.*, 173 W.Va. 210, 314 S.E.2d 166 (1983). Because petitioner cannot show the existence of such contract, there can be no tortious interference with a contract under the facts and circumstances of this case. Therefore, we find that the circuit court did not err in granting respondent's motion to dismiss on this ground.

For these reasons, we find no error in the circuit court's finding that respondent was entitled to the dismissal of petitioner's claims against it.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 28, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

**DISSENTING:**

Justice Robin Jean Davis

---

[4] *Crum v. Thornsbury and McComas*, Case No. 15-1131, and *Crum v. Hubbard*, 15-1219, are addressed in a single memorandum decision published contemporaneously with the instant memorandum decision.